UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VENTURA CONTENT, AVV, <br><br>                 Plaintiff, <br><br>    v. <br><br> RYAN MILNES and A.F.I.C. INC. <br><br>                 Defendants. | *CASE NO. 1:10-cv-09572 (RMB)* <br><br> **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |

Ventura Content, AVV ("Ventura") by and for its Complaint against Defendants Ryan

Milnes, d/b/a www.slutload.com and A.F.I.C. Inc. (together, "Defendants") avers as follows:

## INTRODUCTION

1.     Advances in digital technology have caused a profound change in the way that

consumers access copyrighted entertainment content.  Previously, copies of movies and videos

were inextricable from the physical medium, such as a VHS tape, compact disc, or DVD, on

which they were recorded.  Now, with the widespread adoption of high-speed Internet

connections and the ever decreasing cost of computer technology, copyrighted works can be

copied, performed, and virally distributed nearly instantaneously over the Internet.

2.     Entertainment companies, such as Ventura, collectively invest billions of dollars

each year in producing, distributing, and promoting entertainment content to consumers, relying

upon copyright laws to protect their investments.  Many businesses respect the investments that

entertainment companies make in their products and procure licenses when they engage in the

online sale or distribution of copyrighted works.   Others, like Defendants, intentionally

misappropriate valuable entertainment content for their short-term profit.

3.     While on-line piracy has been a problem for all entertainment companies, it is a

uniquely powerful threat to the adult entertainment industry, which relies on the Internet as a means to distribute its content to consumers. Entire movies can now be copied and distributed online by anyone with a computer and an Internet connection at no additional cost. As a result, online copyright piracy has had a devastating impact on the adult entertainment industry. Legitimate companies such as Ventura devote substantial resources to develop and produce high quality, professionally made adult videos in conformity with the record keeping and labeling requirements imposed under Federal Law. Using the anonymity and power of the Internet, Defendants and others like them steal this content on a massive scale for their own benefit by operating websites known as "Tube Sites" that allow users to upload, view, and download a vast library of infringing adult video content for free.

4.      The emergence of these Tube Sites operated by Defendants and others threatens not just Ventura, but the entire adult entertainment industry. *See, e.g.*, C. Brian Smith, *Porn Panic!*, Advocate.com, Apr. 6, 2009 (reporting that "many [websites] tacitly permit users to upload copyrighted content" and "many producers are resigned to the reality" that copyright infringement is inevitable on tube sites).

5.      Tube Sites maintain the fiction that they offer a forum for consumers to upload and share their own original "user-generated" adult video content; however, in reality, they function as repositories for large collections of copyrighted, professionally made adult videos, including works belonging to Ventura. The site operated by Defendants, accessible at www.slutload.com, (hereinafter the "SL Website"), is no different. Like most Tube Sites, the SL Website contains a prominent link for users to "Upload Video[s]," but the majority of videos contained on the site are not "user-generated," but rather comprised of professionally made, copyrighted content.

6.      Defendants are well aware that the video content available on the SL Website includes substantial volumes of infringing copyrighted material. In fact, even a casual review of

the SL Website shows just how much studio-created, copyrighted content is available through Defendants' services. For example, a review of the most popular videos shows that almost all of them are full or nearly full-length scenes featuring popular adult-industry actors appearing in commercially produced and copyrighted videos.

7.    Indeed, the cornerstone of the Defendants' business plan is their ability to offer their users access to free, copyrighted adult videos as a means to attract users to their sites. The SL Website is among the top websites in the United States, generating millions of unique views each month. Defendants use this traffic to generate money for themselves and their related businesses by selling "premium" memberships, advertising space, and various third-party services. Defendants have amassed substantial profits by appropriating the value of content they do not own on a massive scale without payment to, or any permission from, the copyright owners.

8.    Defendants are not only enabling massive infringement by their users, they knowingly distribute, reproduce, display, and publicly perform the copyrighted works uploaded to the SL Website. Defendants host copies of the infringing videos on servers they control, they create their own copies of the videos in the desired format, and they publicly perform, reproduce, and distribute the infringing videos. Ventura's registered copyrighted works available on the SL Website have been viewed millions of times by Defendants' users.

9.    In addition to the rampant copyright infringement that Defendants cause and encourage, Defendants also routinely present Ventura's copyrighted videos as their own. For example, in numerous cases Defendants have placed the logo for their SL Website as a "watermark" that is visible on every frame of the video content belonging to Ventura. In some cases, this watermark appears along with trademarks belonging to Ventura or its affiliates. In all cases, Defendants intentionally manipulate the videos posted to the SL Website and mislead users as to the source of the content on that site.

- 3 -

10.     Defendants' willful infringement and other illegal conduct have harmed and continue to harm the interests of legitimate copyright owners, including Ventura.  Absent relief from the Court, Defendants' rampant infringement will continue to undermine the ability of content owners such as Ventura to conduct business.  Ventura seeks a declaration that Defendants' conduct willfully infringes Ventura's copyrights, an injunction requiring Defendants' to prevent or limit infringement of Ventura's copyrights, and damages in an amount to be determined at trial.

## THE PARTIES

**Ventura**

11.     Ventura Content, AVV is an Aruban corporation with its principal place of business in Aruba.  Ventura owns copyrights in certain adult-oriented content and distributes such content throughout the United States including in New York through its affiliates and licensees located in the United States.  The primary market for Ventura's content is in the United States, and virtually all of its business operations relating to the matters at issue in this case are conducted in the United States through its affiliated companies and licensees.  Ventura Content, AVV owns each of the copyrights at issue in this litigation including all of the compilations of videos distributed on behalf of Ventura and all of the new or preexisting constituent elements, *i.e.*, videos, contained therein.

12.     Ventura owns numerous copyrights for its high quality adult videos.  Through its affiliates and related companies in the United States, it has invested and continues to invest hundreds of thousands of dollars annually to cultivate and distribute its videos because the Copyright Act protects its economic incentive to do so.  Ventura, through its affiliated companies, distributes and publicly displays and performs these works (within the meaning of the Copyright Act), and/or licenses them for distribution and/or public performance: (a) through websites owned by its affiliated companies (such as www.pinkvisual.com,

www.pinkvisualpass.com, and www.ipinkvisualpass.com) and a small number of other authorized Internet distribution channels; (b) on DVD and other video formats; and (c) by telecast on pay-per-view television systems.

13.     Ventura's copyrighted content is distributed under the trademark "Pink Visual" and the websites owned and operated by its affiliated companies generate advertising and subscription revenue, as well as other benefits, from the Internet traffic advanced by the availability of Pink Visual-branded video content.

14.     Ventura is the owner (including the owner by assignment from its affiliated companies) of valid, subsisting copyrights in adult videos many of which have been registered in the United States Copyright Office in accordance with the provisions of the United States Copyright Act.  Ventura owns both the copyrights in these compilations as well as all of the constituent copyrighted elements contained therein including all new matter and preexisting materials (which consist of copyrighted videos also owned by Ventura).  A representative list of these valid copyrighted works infringed by Defendants herein is attached to this Complaint as Exhibit A.

**Defendants**

15.     Defendant Ryan Milnes is an individual living in Ontario, Canada.  Upon information and belief, Ryan Milnes has also lived or worked in Pensacola, Florida during time periods relevant to this litigation.   Mr. Milnes owns and/or controls defendant A.F.I.C., Inc. Upon information and belief, in addition to his own conduct, Mr. Milnes personally makes decisions regarding, participates in, directs, exercises control over, and benefits from the infringing activities of A.F.I.C., Inc.

16.     Defendant A.F.I.C, Inc. is a Canadian corporation with a principal place of business in Ontario, Canada.

17.     Together Defendants own and operate the SL Website.

- 5 -

## JURISDICTION AND VENUE

18.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 – 17 and 25 - 74 as though set forth at length in paragraphs 18 - 24 herein.

19.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

20.     This Court has original subject matter jurisdiction over the copyright infringement claims pursuant to 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a).

21.     This Court has personal jurisdiction over Defendants.  Defendants transact business in New York and contract to supply goods and services in the state in connection with the matters giving rise to this suit.  *See* NY CPLR § 302(a)(1).  Upon information and belief, Defendants, by themselves and through their agents, have engaged in paid commercial transactions with New York residents for the provision or sale of goods and services including infringing materials.  Using the lure of infringing materials, Defendants openly encourage their users (including users in New York) to upgrade to lifetime "premium" memberships via the SL Website, which can result in substantial monthly charges to users and substantial payment to Defendants.  For example, each time a user finishes viewing an infringing video and each time a user attempts to watch the video in "high-definition," download the video, watch the full-length video, or watch the video on a mobile device through the SL Website, Defendants invite the user to upgrade to a "premium" account.  Defendants' user must then supply a credit card, an email address and other billing information and receive confirmation of same from Defendants either directly or through their payment processing companies.  Defendants have also attended trade shows in New York for the purpose of transacting business and promoting the SL Website.

22.     In addition to sales of paid subscriptions, Defendants also derive advertising revenues directly attributable to the presence of infringing works on the SL Website.  They permit third party advertisers to display advertisements on the SL Website and receive revenues

whenever their users, including New York users, "click on," view, or make purchases through such advertisements. Defendants also advertise their other related businesses via the SL Website and seek to direct users to other websites operated by or affiliated with Defendants that require paid subscription fees. Thus, there is a direct and substantial nexus between Ventura's claims in this case and Defendants' transaction of business with their New York users. Moreover, the SL Website falls at the most interactive end of the spectrum in the terms of its overall design, use and functionality. For example, in addition to enticing New York users to engage in commercial transactions, Defendants enable New York residents to use services that Defendants own and operate to: (a) access digital files containing Ventura's copyrighted content; (b) view and download infringing copies of Ventura's works; (c) comment on and rate copyrighted content; and (d) create lists of favorite videos for repeated viewing. The voluminous acts of direct infringement, for which Defendants are liable, require the repeated transmission of infringing files from Defendants' computers to their users, including, upon information and belief, to users located in New York. Thus, Defendants are responsible for the acts of infringement that, upon information and belief, have occurred in New York, where New York residents have accessed Defendants' SL Website to view and download infringing copies of Ventura's works. Moreover, the SL website offers numerous other interactive features designed to improve the overall infringing nature of their service. For example, Defendants allow their users in New York to "register" with the SL Website and sign in using their own user names and passwords in order to receive additional infringing features and benefits. Defendants also provide support to users and even require their users to indemnify them for infringing uses of the SL Website.

23.     Upon information and belief, Defendants also engage in widespread and continuous business activities and derive substantial revenues from their contacts with the United States as a whole. For example, approximately 25% of Defendants' total traffic, comprising millions of views each month, comes from the United States. Furthermore, Defendants'

"premium" section, by default, assumes that a prospective paying customer is from the United States.  In addition, Defendants have entered into contracts with businesses located in the United States for the provision of services throughout the United States.  Defendants actively monitor the traffic on the SL Website and purposefully target the United States and its users. Thus, in the alternative, even if Defendants are not subject to personal jurisdiction in any state, they are subject to personal jurisdiction based on their contacts with the United States as a whole.  *See* Fed.R.Civ.P 4(k)(2).

24.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(a).

## NATURE OF THE ACTION

25.     Under Section 106 of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (the "Copyright Act"), Ventura has the distinct, severable, and exclusive rights to, *inter alia*, reproduce, distribute, publicly perform, and publicly display its copyrighted works, as well as the exclusive right to authorize any of these activities.  17 U.S.C. §§ 106(1), (3), (4), (5). Defendants have appropriated and exploited Ventura's copyrighted works, resulting in the rampant infringement evident on the SL Website.  Defendants' acts of infringement remain ongoing to date.

26.     The SL Website provides access to its library of online adult videos, which Internet users may view free of charge.  A user who wants to view a video on the SL Website would generally proceed with three steps.  During the entire experience, the SL Website prominently displays its logo, user interface, and advertising to the user.

27.     *First*, the user goes to a site operated by Defendants by typing in www.slutload.com into the user's web browser.

28.     *Second*, the user may enter search terms into the site's search function, and receive an array of thumbnail images of videos in the site matching those terms.  On information

and belief, the site creates the thumbnails, which are individual frames from videos in its library (including infringing videos) for the purpose of assisting users in locating videos. Alternatively, rather than entering any search terms, the user may elect to view a video from a selection of thumbnails prepared and presented by the website on its home page and within certain predefined categories. The predefined categories include best "rated" videos and those videos with the most views.

29.     *Third*, regardless of how a thumbnail of a video becomes presented to the user — *e.g.*, on the SL Website's home page, as a result of the user's search terms, or within a certain category — the user views the content by clicking on the thumbnail. Defendants then publicly perform the chosen video by sending streaming video content from servers they control to the user's computer. On information and belief, Defendants themselves create the copy of the infringing video files that are hosted on the servers they control and transmit multiple copies of those same video files to multiple different users. On information and belief, the public performance of the video also results in a copy of the video being made and distributed to the user's computer.

30.     Although the website operated and controlled by Defendants allow for users to upload videos to the SL Website, Defendants add their own logo as a "watermark" to most of the videos, leaving the impression that Defendants have produced and/or are authorized to distribute the content, when in fact they are not.

31.     All uploaded videos become part of the SL Website's library for performance and display. Regardless of who uploads a specific video, Defendants copy the video in their own technical format, add it to the servers they control, make it available for viewing on the SL Website, add their own logo to it, and provide the means for users to search for and locate the content of their choice. Defendants commit the infringing public performance, public display, and distribution of Ventura's copyrighted works, and that infringement occurs on the website

- 9 -

operated and controlled by Defendants.

32.     Defendants and the users of their website have not received license, authorization, permission, or consent to use the registered copyrighted works owned by Ventura that have appeared on the SL Website (including, but not limited to, the content listed on Exhibit A). Instead, Defendants have willfully, intentionally, and purposefully reproduced, publicly performed, and publicly displayed the copyrighted works, and knowingly facilitated, enabled, induced, and materially contributed to infringing uses thereof, and refused to exercise their ability to control or supervise infringing uses thereof from which they obtain direct financial benefits.

33.     Defendants have actual knowledge and notice of this infringement, which is obvious to even a casual visitor to the SL Website.  The rampant infringement of Ventura's copyrights on Tube Sites is open and notorious, and has been the subject of industry reports. *See, e.g.*, Oliver J. Chiang, *The Challenge of User-Generated Porn*, Forbes.com, August 5, 2009, at http://www.forbes.com/2009/08/04/digital-playground-video-technology-e-gang-09-ali-joone.html.  The SL Website also contains numerous "Red flags" from which infringing activity is apparent, such as the presence of numerous full-length or extended videos often featuring well-known adult industry "pornstars" who appear in studio-produced and copyrighted films. Indeed, the infringing copyrighted material on the website is a critical part of Defendants' business plans to increase the SL Website's traffic, market share, revenue, profits, and enterprise value.

34.     Defendants profit from the infringement of Ventura's copyrighted works, and receive financial benefits directly attributable to their infringing activities.  Defendants have built an infringement-driven business by exploiting the popularity of copyrighted works to draw millions of users to their website.  Defendants derive advertising revenue directly attributable to the infringing works, because (i) advertisers pay Defendants to display banner advertising to

users whenever they access the SL Website and search for (or view) infringing videos and (ii) Defendants seek to sell paid subscriptions and other goods and services to users who are drawn to their website by the allure of free content. There is a direct causal connection between the presence of infringing videos and Defendants' income. Thus, the draw of infringing works — encompassing the infringement of Ventura's works — contributes substantially and directly to the values of the SL Website.

35.     Defendants have the right and ability to control the massive infringement on the SL Website. With respect to content uploaded by users, the infringement is being committed on the Defendants' own website — not on websites controlled by other entities. Defendants explicitly recognize their control over infringing content. For example, the SL Website's Terms & Conditions expressly state that Defendants retain the right to delete user submissions.

36.     Defendants have failed to employ readily available measures that could substantially reduce or eliminate the massive amount of copyright infringement on the SL Website. Even though they are well aware of — and admit they have the right and ability to control — the rampant infringement on the SL Website, Defendants' intentional strategy has been to take no steps to curtail the infringement from which they profit unless notified of specific infringing videos by copyright owners, shifting the entire burden (and high cost) of monitoring the SL Website onto the victims of infringement.

37.     Defendants adopted this hands-off policy knowing that copyright owners have limited ability to monitor for infringing videos on the sites and send takedown notices for the videos they find. Copyright owners can monitor for infringing videos only after they are posted on the site, so there is an inevitable time lag between when a video is posted and the first reasonable time at which an owner can identify it and send a takedown notice.

38.     Defendants' strategy and conduct leave Ventura unable to meaningfully protect its rights. Defendants deprive Ventura of economic returns to which it is entitled under the

copyright laws, thereby undermining the system of incentives that copyright provides for the creation and distribution of creative works.

## CLAIMS FOR RELIEF

## COUNT I

### (Direct Copyright Infringement – Public Performance)

39.     Ventura incorporates by reference paragraphs 1 - 38 as if set forth herein.

40.     Without authorization, Defendants are publicly performing and have publicly performed or have authorized the public performance of, by means of digital video transmission, Ventura's copyrighted video content in violation of 17 U.S.C. §§ 106(4) and 501, including but not limited to the copyrighted video content listed in Exhibit A hereto.

41.     The infringement of Ventura's rights in the public performance of each of its copyrighted video works constitutes a separate and distinct act of infringement.

42.     Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Ventura's rights.

43.     As a direct and proximate result of Defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including Defendants' profits from infringement, as will be proven at trial.

44.     Ventura is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

45.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated or measured in money damages.  Ventura has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Ventura

is entitled to an injunction prohibiting infringement of Ventura's copyrights and exclusive rights under copyright.

## COUNT II

### (Direct Copyright Infringement – Public Display)

46.     Ventura incorporates by reference paragraphs 1 - 45 as if set forth herein.

47.     Without authorization, Defendants are publicly displaying and have publicly displayed or have authorized the public display, by means of digital transmission, digital images taken from Ventura's copyrighted video content in violation of 17 U.S.C. §§ 106(5) and 501.

48.     The infringement of Ventura's rights in the public display of its copyrighted digital images constitutes a separate and distinct act of infringement.  Each time Defendants display an unauthorized copy of an image taken from Ventura's copyrighted video content, Defendants publicly display Ventura's works in violation of Ventura's exclusive right under 17 U.S.C. § 106(5).

49.     Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Ventura's rights.

50.     As a direct and proximate result of Defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including Defendants' profits from infringement, as will be proven at trial.

51.     Ventura is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

52.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated or measured in

money damages.  Ventura has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Ventura is entitled to an injunction prohibiting infringement of Ventura's copyrights and exclusive rights under copyright.

### COUNT III

### (Infringement of Ventura's Distribution Rights)

53.     Ventura incorporates by reference paragraphs 1 - 52 as if set forth herein.

54.     Without authorization, Defendants are distributing and have distributed or have authorized the distribution to the public copies of Ventura's copyrighted video content in violation of 17 U.S.C. §§ 106(3) and 501, including but not limited to the copyrighted video content listed in Exhibit A hereto.

55.     The infringement of Ventura's rights to distribute its copyrighted video content constitutes a separate and distinct act of infringement.  Each time Defendants transfer an unauthorized copy of one of Ventura's copyrighted video works from Defendants' servers to another computer or other device, Defendants distribute that copy in violation of Ventura's exclusive rights under 17 U.S.C. §§ 106(3).

56.     Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Ventura's rights.

57.     As a direct and proximate result of Defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including Defendants' profits from infringement, as will be proven at trial.

58.     Ventura is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

59.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated or measured in money damages.  Ventura has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Ventura is entitled to an injunction prohibiting infringement of Ventura's copyrights and exclusive rights under copyright.

## COUNT IV

### (Contributory Copyright Infringement)

60.    Ventura incorporates by reference paragraphs 1 - 59 as if set forth herein.

61.    Users of Defendants' website have infringed and are infringing Ventura's rights in their registered copyrighted works by *inter alia* uploading and downloading infringing copies of Ventura's copyrighted works on the SL Website, and publicly performing or displaying or purporting to authorize the public performance or display of such infringing videos.  Defendants' users are therefore directly infringing Ventura's exclusive rights of reproduction, distribution, public performance, and public display under 17 U.S.C. § 106.

62.    Defendants are liable under the Copyright Act for inducing the infringing acts of Defendants' users.  Defendants operate and maintain their sites with the object of promoting their use to infringe Ventura's copyrighted works.  Defendants' inducement of copyright infringement is apparent from, among other things, the predominantly infringing content available on their sites; Defendants' open listing, categorization, and advertising of obviously infringing works; Defendants' express invitations to view and download the most sought-after video content for free; Defendants' failure to make any earnest effort to prevent or filter copyright infringement on their sites; and Defendants' business model for the SL Website, which is overwhelmingly dependent upon widespread copyright infringement.  Defendants unlawfully induce the direct infringement of Ventura's copyrighted works, including those listed on Exhibit A hereto, in violation of Ventura's exclusive rights under the copyright laws of the United States.

17 U.S.C. § 106.

63.     In addition, Defendants have actual and constructive knowledge of the infringing activity that occurs on and through their sites.  Through the creation, maintenance, and operation of the sites and facilities for this infringement, Defendants knowingly cause and/or otherwise materially contribute to the unlawful reproduction, distribution, and public performance and display of Ventura's copyrighted works, including those listed on Exhibit A hereto, in violation of Ventura's exclusive rights under the copyright laws of the United States.

64.     The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of and indifferent to Ventura's rights.

65.     As a direct and proximate result of Defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including Defendants' profits from infringement, as will be proven at trial.

66.     Ventura further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

67.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated for or measured in money.  Ventura has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Ventura is entitled to an injunction prohibiting further infringements of its copyrights and exclusive rights under copyright.

## COUNT V

### (Vicarious Copyright Infringement)

68.     Ventura incorporates by reference paragraphs 1 - 67 as if set forth herein.

69.     Users of Defendants' website have infringed and are infringing Ventura's rights in their registered copyrighted works by *inter alia* uploading and downloading infringing copies of Ventura's copyrighted works on the SL Website, and publicly performing or displaying or purporting to authorize the public performance or display of such infringing videos.  Defendants' users are therefore directly infringing Ventura's exclusive rights of reproduction, distribution, public performance, and public display under 17 U.S.C. § 106.

70.     Defendants are vicariously liable for such infringing acts.  Defendants have the right and ability to supervise and control the infringing activities that occur through the use of their website, and at all relevant times have derived a direct financial benefit attributable to the infringement through that site.  Defendants are therefore vicariously liable for the unlawful reproduction, distribution, and public performance and display of Ventura's copyrighted works, including those listed on Exhibit A hereto, in violation of Ventura's exclusive rights under the copyright laws of the United States.

71.     The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of and indifferent to Ventura's rights.

72.     As a direct and proximate result of Defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including Defendants' profits from infringement, as will be proven at trial.

73.     Ventura further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

74.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated for or measured in

money.  Ventura has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Ventura is entitled to a preliminary and permanent injunction prohibiting further infringements of its copyrights and exclusive rights under copyright.

## PRAYER FOR RELIEF

WHEREFORE, Ventura prays for judgment against Defendants as follows:

1.      For a declaration that the website owned, operated, and/or controlled by Defendants willfully infringe Ventura's copyrights both directly and secondarily.

2.      For injunctive relief requiring that Defendants and their agents, employees, officers, successors, licensees, and all persons acting in concert or participation with each or any of them, cease: (a) directly or indirectly infringing, or causing, enabling, facilitating, materially contributing to, encouraging, and inducing or participating in the infringement of any of Ventura's respective copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created; and (b) uploading, downloading, reproducing, distributing, displaying, or performing Ventura's copyrighted works, whether through the SL Website or by any other means.

3.      For statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), for actual damages plus Defendants' profits from infringement, as will be proven at trial.

4.      For Ventura's costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

5.      For pre- and post-judgment interest according to law.

6.      For such other and further relief as the Court may deem just and proper.

Dated:  January 7, 2011                    Respectfully submitted,


                                           By: _____

                                           Gianni P. Servodidio (GS-0713)
                                           Joseph J. McFadden (JM-3232)
                                           JENNER & BLOCK LLP
                                           919 Third Avenue; 37th Floor
                                           New York, NY 10022-3908
                                           Telephone:  (212) 891-1600
                                           Facsimile:  (212) 891-1699

                                           -and-

                                           Jessica Pena-Sackett
                                           (subject to admission *pro hac vice*)
                                           6614 E Tanque Verde Rd
                                           Tucson, AZ  85715-3814

                                           *Attorneys for Ventura Content, AVV*

## Exhibit A  -  List of Infringed Works

|   | Copyright Registration Number Or eCO Number | Short Title/Episode Number |
|---|---|---|
| 1 | PA0001339094 | CST009; CST010 |
| 2 | PA0001365214 | CST001 |
| 3 | PA0001377148 | BES129 |
| 4 | PA0001377156 | HBG023 |
| 5 | PA0001382769 | CST205 |
| 6 | PA0001383716 | ASP017 |
| 7 | PA0001383722 | BSB004 |
| 8 | PA0001383734 | BBG003 |
| 9 | PA0001383753 | WFT134 |
| 10 | PA0001383756 | HWB134 |
| 11 | PA0001384024 | TFC188 |
| 12 | PA0001385196 | HBG079 |
| 13 | PA0001385321 | HFA128 |
| 14 | PA0001646230 | TFC184, TFC182 |
| 15 | PA0001646257 | FTS058 |
| 16 | PA0001646260 | HFA175 |
| 17 | PA0001646269 | CST114 |
| 18 | PA0001646274 | HFA232 |
| 19 | PA0001646280 | SS019 |
| 20 | PA0001649207 | CST066 |
| 21 | PA0001653824 | BCWS177 |
| 22 | PA0001664604 | SH062 |
| 23 | PA0001665251 | CFMX052 |
| 24 | PA0001665252 | ASP064 |
| 25 | PA0001669982 | CST138 |
| 26 | PA0001670552 | SS057 |
| 27 | PA0001670558 | GBJ016 |
| 28 | PA0001670560 | HFDP155 |
| 29 | PA0001673969 | HCG004 |
| 30 | PA0001673972 | BBG046 |
| 31 | PA0001673981 | ASP026; CST065 |
| 32 | PA0001673988 | HFLS135 |
| 33 | PA0001673993 | HBG022; HCT033 |
| 34 | PA0001676332 | MSTG007 |
| 35 | PA0001676346 | WS032 |
| 36 | PA0001676349 | SH058 |
| 37 | PA0001678341 | MS250 |
| 38 | PA0001678342 | EXH140 |
| 39 | PA0001678353 | HFA190 |
| 40 | PA0001678727 | GBJ012 |
| 41 | PA0001688073 | CFMX051 |
| 42 | eCO 1-535317443 | HFA211 |

37048.1

| 43 | eCO 1-535317086 | SS018 |
|----|-----------------|---------|
| 44 | eCO 1-535317062 | HFLS167 |
| 45 | eCO 1-535317328 | GBS176 |
| 46 | eCO 1-535317198 | GBS180 |
| 47 | eCO 1-534946971 | CST149 |
| 48 | eCO 1-535317013 | HFA261 |
| 49 | eCO 1-535317132 | MS300 |
| 50 | eCO 1-535317285 | EXH156 |
| 51 | eCO 1-535346911 | CST131 |
| 52 | eCO 1-535317421 | CST206 |
| 53 | eCO 1-535267897 | HFLS310 |

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

VENTURA CONTENT, AVV,

                                                      Plaintiff,                    **CERTIFICATE OF SERVICE**

        v.

RYAN MILNES and A.F.I.C. INC.

                                                      Defendants.


        I, Joseph J. McFadden, an attorney for plaintiff in the above referenced action, hereby

certify that, on January 7, 2011, I served the attached *Amended Complaint* and accompanying

exhibit upon Defendants Ryan Milnes and A.F.I.C., Inc. by sending true and correct copies of

same via overnight mail to:

Ryan Milnes
3 Pinehurst Lane
Minesing, Ontario CA  LOL1Y2


_____
Joseph J. McFadden